IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CR-15-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| FREEDMAN FARMS, INC., | ) |
| and WILLIAM BARRY FREEDMAN, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on several motions in limine. Specifically, before the court is defendants' motion in limine seeking to exclude the government's experts' opinions regarding whether Browder's Branch is a "water of the United States" and whether it has a "significant nexus" with other waters (DE # 130). Also before the court is the government's motion to exclude defendants' evidence relating to the presence or absence of environmental harm (DE # 121). These motions have been fully briefed, and, in this posture, are ripe for review. For the reasons that follow, defendants' motion is GRANTED, and the government's motion is DENIED.

STATEMENT OF THE CASE

Defendants William Barry Freedman ("Freedman") and Freedman Farms, Inc. ("Freedman Farms") are charged with one count of violating the Clean Water Act ("the Act"), 33 U.S.C. § 1311(a), and § 1319(c)(2)(A), two counts of making false statements in violation of 18 U.S.C. § 1001, and one count of obstruction of justice in violation of 18 U.S.C. § 1503.

Freedman Farms is a hog farm located in Columbus County, North Carolina. Freedman is alleged to be the principal operator of the farm. The government alleges that in December, 2007, defendants knowingly discharged over 300,000 gallons of hog waste into Browder's Branch, which the government describes as a perennial stream that flows to Western Prong Creek to Red Hill

1

Swamp, into the White Marsh, which flows into the Waccamaw River, a traditionally navigable water. This matter is set for trial to begin June 28, 2011.

DISCUSSION

A. Government's First Motion in Limine

The government anticipates defendants will seek to introduce evidence that there was minimal or no harm to the environment resulting from the discharge of hog waste into Browder's Branch. The government argues the evidence should be excluded because environmental harm is not an element of the offense under the Act with which defendants are charged, nor is lack of environmental harm a valid defense. Defendants respond that although environmental harm itself is not an element of the offense, lack of environmental harm is relevant to, and strongly supports, the jurisdictional defense offered by defendants.

The government is correct that environmental harm is not necessary to prove a knowing violation of the Act. Liability is automatic once the trier of fact determines that a pollutant entered the water. See 33 U.S.C. §§ 1311 (providing that "the discharge of any pollutant by any person shall be unlawful"); see also State of Ga. v. City of East Ridge, Tenn., 949 F.Supp. 1571, 1579 (N.D.Ga. 1996) (stating that "[b]ecause liability under the Clean Water Act is automatic once the trier of fact determines that a pollutant entered the water, Defendant's arguments concerning minimal adverse impact to the affected waters is irrelevant"). The government need not prove that environmental harm resulted from the alleged actions at issue, nor may the defendant rely solely on proof of lack of environmental harm to establish that no violation occurred.

At the same time, defendants are correct that the issue is relevant, in part, to whether a significant nexus exists between Browder's Branch and other nearby waters, and therefore that the evidence is relevant to a potential jurisdictional defense. As Justice Kennedy explained in Rapanos,

and as the court will instruct the jury, "wetlands possess the requisite nexus . . . if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.' When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term 'navigable waters.'" Rapanos v. U.S., 547 U.S. 715, 780 (2006).[1]

Case law suggests that presence or absence of environmental harm could be but one relevant factor in establishing the existence of a significant nexus. In U.S. v. Robison, the Eleventh Circuit held that the government failed to satisfy its burden as to whether a significant nexus existed between Avondale Creek and the Black Warrior River. 505 F.3d 1208, 1223 (11th Cir. 2007). The Eleventh Circuit observed that "the government did not present any evidence . . . about the possible chemical, physical, or biological effect that Avondale Creek may have on the Black Warrior River, and there was also no evidence presented of any actual harm suffered by the Black Warrior River." Id. Presence or absence of environmental harm therefore *could* be relevant to establishing whether a significant nexus exists between Browder's Branch and other waters.

However, the court notes that the existence of a significant nexus may in some cases be established by the absence of interchange of waters. As Justice Kennedy observed, "[g]iven the role wetlands play in pollutant filtering, flood control, and runoff storage, it may well be the absence of hydrologic connection (in the sense of interchange of waters) that shows the wetlands' significance for the aquatic system." Rapanos, 547 U.S. at 786. The trier of fact might therefore reasonably conclude that the absence of hog waste in the waters downstream underpins a finding that there is

---

[1] For a more expansive recitation, reference is made to the court's "Notice Regarding Jury Instructions," dated February 17, 2011 (DE # 93), and also to the court's order denying the government's motion for reconsideration, dated May 18, 2011 (DE # 113).

3

a significant nexus premised on functionality. The failure of hog waste to travel downstream to navigable waters *could* show that a significant nexus does exist.

For these reasons, the government's motion in limine to exclude this evidence is DENIED. Nevertheless, a limiting instruction could address the government's concerns to some extent, and accordingly the parties are invited to suggest limiting instruction(s) so that the jury understands it cannot consider this evidence but for a certain purpose.

B.      Defendants' First Motion in Limine

Defendants seek to limit the testimony of the government's experts on the issue of jurisdiction, such that no expert will be permitted to opine that Browder's Branch is a "water of the United States" or that it has a "significant nexus" with the nearest navigable waterway. The government responds that its experts should be able to testify as to these issues.

It has already become well-established throughout this case that the phrases "water of the United States" and "significant nexus" relate critically to the government's ability to establish jurisdiction, and therefore liability, under the Act. As already stated, liability under the Act exists only where a discharge of pollutants is made into a "water of the United States." See 33 U.S.C. § 1311(a) (prohibiting the discharge of any pollutant); Id. at § 1362(12)(A) (defining "discharge of a pollutant" as the addition of a pollutant into navigable waters); Id. at § 1362(7) (defining "navigable waters" as "waters of the United States, including the territorial seas"). The importance of the phrase prompted the court to require early briefing by the parties regarding what constitutes a "water of the United States." The court thereafter noticed its intent to instruct the jury, in part, based on the "significant nexus" test promulgated by Justice Kennedy in Rapanos v. U.S., 547 U.S. 715 (2006). That test provides that wetlands come within the government's jurisdiction under the Act if the wetlands possess a "significant nexus" to other "waters of the United States." Id. at 779-

4

80. The term "significant nexus" itself is carefully defined. As Justice Kennedy explained, and as the jury will be instructed, a "significant nexus" exists if the wetlands, "either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" Id. at 780.

Federal Rule of Evidence 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The rule abolishes the so-called "ultimate issue rule" but does not lower the bar "so as to admit all opinions." See Fed.R.Evid. 704 advisory committee's notes. Testimony on ultimate issues still "must be otherwise admissible under the Rules of Evidence," meaning that the testimony must be helpful to the trier of fact, in accordance with Rules 701 and 702, and must not waste time, in accordance with Rule 403. U.S. v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006). "These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." Id. (citing U.S. v. Barile, 286 F.3d 749, 759-60 (4th Cir. 2002)).

"The touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness to the jury." Id. "Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." Barile, 286 F.3d at 760. The district court's task, therefore, "is to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion," a task the Fourth Circuit has acknowledged "is not an easy one." Perkins, 470 F.3d at 158.

The Fourth Circuit has given guidelines as to how to approach the task, stating that "the best way to determine whether opinion testimony is unhelpful because it merely states legal conclusions is to determine whether the terms used by the witness have a separate distinct and specialized

5

meaning in the law different from that present in the vernacular." Id. If a term does have a separate and distinct legal meaning different from the vernacular, then opinion testimony as to the term is inadmissible as a legal conclusion. For example, "conclusory testimony that a company engaged in 'discrimination,' that a landlord was 'negligent,' or that an investment house engaged in a 'fraudulent and manipulative scheme'" is inadmissible because it involves the use of terms with "considerable legal baggage" and "nearly always invades the province of the jury." Id.

Defendants submit that the terms "water of the United States" and "significant nexus" are terms with distinct legal meaning that carry considerable legal baggage and are therefore unsuitable for expert opinion testimony. The terms do in fact have separate and distinct legal meanings. "Water of the United States" comes directly from the statute and has been interpreted ad nauseum in the case law, including Rapanos, from which comes the special term "significant nexus," defined very thoughtfully and specifically therein. Both terms represent areas of factual determination within the province of the jury. See U.S. v. Robinson, 505 F.3d 1208, 1224 n. 21 (11th Cir. 2007) (noting that whether a water is a "water of the United States" is a "question for the jury in the first instance"); Rapanos, 547 U.S. at 787 (Kennedy, J., concurring) (recommending remand for factual determination as to whether significant nexus existed). Indeed, in instructing the jury as to the law at the close of the case, the court will necessarily deliver a jury instruction that defines both "water of the United States" and "significant nexus." The jury will then be required to apply the facts as they find them to the law as the court instructs, and determine whether Browder's Branch is a "water of the United States" or whether it possesses a "significant nexus" with other waters.

Expert opinion testimony as to whether or not Browder's Branch constitutes a "water of the United States" or whether it possesses a "significant nexus" with other waters would therefore merely state a legal standard or draw a legal conclusion by applying law to the facts. See U.S. v.

6

McIver, 470 F.3d 550, 561-62 (4th Cir. 2006) (stating that "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible"). Such testimony would impermissibly invade the province of the jury by merely telling the jury what result to reach. See Perkins, 470 F.3d at 157-58 (stating that witness testimony as to terms having a specialized legal meaning nearly always invades the province of the jury); see also Barile, 286 F.3d at 761 (affirming exclusion of expert testimony in false statement case that statements at issue did not contain "materially misleading statements" because such testimony "arguably constitutes a legal conclusion because materiality has a specialized legal meaning").

The government nevertheless asserts that its experts should be permitted to opine as to whether Browder's Branch is a "water of the United States" or whether it possesses a "significant nexus" with other waters. In support, the government points to several examples of expert opinions as to ultimate facts that have been permitted by trial courts. See, e.g. Perkins, 470 F.3d at 159-60 (finding expert opinion that there was "no reason" for officer's use of force was admissible where the legal question was whether the officer had acted "reasonably"); U.S. v. Two Eagle, 318 F.3d 785, 792 (8th Cir. 2003) (upholding admission of opinion that victim had received "serious bodily injury," where the statute used the same term); McIver, 470 F.3d at 562 (upholding admission of expert opinion that doctor acted "outside the bounds of his professional medical practice and for other than legitimate medical purposes" because, although the phrase was used by the court in previous opinions, the testimony was expressed in the "limited vernacular" available to describe the doctor's practices). These examples are distinguishable, though, because they involve more commonly used words whose plain meaning matches their legal meaning. Thus, they do not involve the use of terms carrying such "considerable legal baggage" as those at issue here. See Perkins, 470 F.3d at 158.

7

Case 7:10-cr-00015-FL   Document 142   Filed 06/27/11   Page 7 of 10

The government further asserts that it will be prevented from proving its case if its experts are not permitted to opine as to "waters of the United States" or "significant nexus." The government's argument is unconvincing. For example, the government cites Robison, 505 F.3d at 1223, asserting that in that case the Eleventh Circuit held that the government failed to prove its case precisely because the expert failed to opine on the existence of a "significant nexus." The government's characterization is misleading. In that case, the Eleventh Circuit explained that the government had failed to satisfy its burden because

> [a]lthough Wagoner (the EPA investigator) testified that in his opinion there is a continuous uninterrupted flow between Avondale Creek and the Black Warrior River, he did not testify as to any 'significant nexus' between Avondale Creek and the Black Warrior River. The government did not present any evidence, though Wagoner or otherwise, about the possible chemical, physical, or biological effect that Avondale Creek may have on the Black Warrior River . . .

Id. The Eleventh Circuit therefore did not reach its conclusion "because the expert failed to opine on the existence of a 'significant nexus,'" as asserted by the government, but because the expert failed to offer sufficient testimony as to the relationship between the two waters as to establish the existence of a significant nexus. The same is true for Precon Development Corp., Inc. v. U.S. Army Corps of Engineers, which the government cites for the same proposition but in which, like in Robison, the government's case was insufficient not because the expert failed to opine as to a "significant nexus," but because there was insufficient evidence to allow the conclusion that a significant nexus existed. See 633 F.3d 278, 294-95 (4th Cir. 2011) (examining the evidence of record and concluding that although there was evidence as to the ecological function of the wetlands and tributaries at issue, "there is no documentation in the record that would allow us to review [the government's] assertion that the functions that these wetlands perform are 'significant' for the Northwest River").

8

The court certainly anticipates that the government, as well as defendants, will introduce abundant evidence as to the nature of the relationship between Browder's Branch and other waters, and the effect (or lack of effect) of Browder's Branch on those waters. See Precon, 633 F.3d at 293-97 (discussing evidence that can establish a significant nexus and remarking that "we agree that the significant nexus test does not require laboratory tests or any particular quantitative measurements in order to establish significance"). Indeed, "the significant nexus test is a flexible ecological inquiry into the relationship between the wetlands at issue and traditional navigable waters." Id. at 294. No expert, however, will be permitted to opine as to whether Browder's Branch is or is not a "water of the United States" or that it does or does not possess a "significant nexus" with other nearby waters. Because those terms have specialized legal meaning, such testimony addressing a legal conclusion reached by applying law to facts would impermissibly invade the province of the jury by merely telling the jury what result to reach. See Perkins, 470 F.3d 157-58; McIver, 470 F.3d at 562. For that reason, defendants' motion is GRANTED.

## CONCLUSION

For the foregoing reasons, the government's motion in limine to exclude evidence relating to presence or absence of environmental harm (DE # 121) is DENIED, but with reference to that evidence sought to be excluded by the government, the parties may suggest limiting instruction(s) cautioning the jury that it cannot consider this evidence but for a certain purpose.[2] Defendants' motion in limine to exclude expert opinion as to whether Browder's Branch is a "water of the United States" or whether it possesses a "significant nexus" with other waters (DE # 130) is GRANTED.

---

[2] At hearing tomorrow, in advance of trial, noticed to convene at 8:30 a.m., the parties shall tender any proposed instruction of or relating to this issue.

SO ORDERED, this the 27th day of June, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge