IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CR-15-FL
NO. 7:13-CV-92-FL

| | |
|---|---|
| WILLIAM BARRY FREEDMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

This matter comes before the court on petitioner's motion to vacate under 28 U.S.C. § 2255 (DE 300), respondent's corresponding motion to dismiss (DE 327), and respondent's motion to find attorney-client privilege to be waived (DE 323). The issues raised have been fully briefed, and are ripe for ruling. For the following reasons, the court denies in part and grants in part respondent's motion to dismiss, denies in part and holds in abeyance remaining part of petitioner's motion to vacate, and denies in part and grants in part respondent's motion to find attorney-client privilege has been waived.

### BACKGROUND

On July 6, 2011, after six days of trial, petitioner, who then was represented by W. James Payne ("Payne") and Michael R. Ramos ("Ramos"), pleaded guilty, pursuant to a written plea agreement, to one misdemeanor count of negligent violation of the Clean Water Act, in violation of 33 U.S.C. §§ 1311(a) and 1319(c)(1)(A), arising out of the discharge of hog waste into Browder's Branch. The co-defendant, Freedman Farms, Inc. ("the corporate defendant"), represented by

Joseph Zeszotarski ("Zeszotarski"), also pleaded guilty, pursuant to a written plea agreement, to one count of knowing violation of the Clean Water Act and aiding and abetting, in violation of 33 U.S.C. § 1319(c) and 18 U.S.C. § 2.

The corporate defendant's plea agreement contained a promise by the government to make known certain information to the United States Environmental Protection Agency's ("EPA") Office of Suspension and Debarment. The corporate defendant agreed to pay a $500,000.00 fine as well as an additional $1,000,000.00 in restitution, despite the fact that the corporate defendant had already paid the costs of the cleanup of the waste. The corporate defendant's plea agreement provided that restitution would be joint and several with the co-defendant, petitioner herein. Petitioner agreed that he would make restitution in whatever amount the court ordered.

Sentencing for petitioner and the corporate defendant was held on February 13, 2012. The corporate defendant was sentenced to five years probation, and a fine of $500,000.00, due immediately. Restitution in the amount of $1,000.000.00 also was imposed, to be paid in five annual installments of $200,000.00, with the first payment being due January 30, 2013. Petitioner was sentenced to six months imprisonment and six months home detention. He was jointly and severally made liable for the restitution amount.

Assumptions of the government underlying some part of its recommendation of a custodial sentence of twelve (12) months appear misplaced now to the extent the government offered petitioner would be treated in a way that likely would allow him some ability to manage farm operations while serving prison time. This has not occurred during the term served, to date. The court was dismissive of that assumption at time of sentencing; however, it made recommendation to the Federal Bureau of Prisons concerning petitioner's placement in attempt to urge this

2

consideration, and permitted petitioner a particularly lengthy period of time to get farming affairs in order before beginning to serve his sentence.

Subsequent to sentencing, petitioner filed numerous motions for reconsideration, and for extensions of time to report. The court denied all of petitioner's motions for reconsideration, but granted his motions for extension. Petitioner was not taken into custody until March 15, 2013.

While on release, the January 30, 2013, due date for the first restitution payment came and went without payment being made. As a consequence, between February 7 and February 11, 2013, the government filed a notice of breach of the plea agreement, as well as numerous motions for surcharge and applications for writs of garnishment. The government also subpoenaed petitioner and others. Shortly before hearing, petitioner obtained new counsel, Randolph James ("James"), who entered notice of appearance on March 4, 2013.

When motions to quash those subpoenas were filed by James, the government filed an emergency motion to compel. The court set these matters for hearing on March 15, 2013. On March 13, 2013, petitioner, through James, filed a notice of impending restitution payment to be brought by petitioner and made at hearing on March 15, 2013, which funds then were received.

At hearing on these motions, ineptitude of petitioner's previously retained counsel in the matter concerning the delayed restitution payment was discussed by James, where Payne sent brief communications informing that "the Clerk's office will likely not be receiving the installment due tomorrow in this matter," and that petitioner "believes that he has taken all good faith steps he thinks he can take and even has a current loan application now pending for the current installment." See Defs.' Mem. Opp'n Regarding 273 Motion for 10% Surcharge (DE 282), 3-5. The court also was informed at hearing that petitioner's previously retained counsel had been non-responsive to

3

communications by petitioner and his new attorney. James informed the court that he had recently made five telephone calls attempting to speak with Payne, which Payne had not returned. Moreover, petitioner asserts that Ramos failed since sentencing to return any of his attempted telephone calls.

Arrangements regarding the payment of restitution appeared to be reached at hearing. Money tendered over in satisfaction of the January 2013 payment was accepted. The court granted the motions to quash the subpoenas and denied the government's motion to compel and renewed applications for writs of garnishment. Petitioner was returned into custody March 15, 2013.

On May 6, 2013, petitioner filed a detailed presentation in the form of an emergency motion to vacate pursuant to 28 U.S.C. § 2255, seeking bail until the determination of this petition. Petitioner maintains that he received ineffective assistance of counsel from Ramos and Payne, contending they made the following representations to him: that by pleading guilty to a misdemeanor debarment would be avoided; that the attorney for the government promised to "stand silent" and not recommend a sentence of active imprisonment; and that he would not be personally liable for restitution.

Petitioner filed with his motion a transcript of a discussion with Payne recorded surreptitiously in which many of these issues were discussed (DE 309-1). By order entered May 14, 2013, the court granted petitioner's motion for bail pending resolution of his motion to vacate and gave the government until May 31, 2013, to respond to petitioner's motion. The government filed a motion to reconsider on May 15, 2013, which was denied by the court by order entered May 16, 2013.

On May 21, 2013, the government filed a motion to find attorney-client privilege to be waived, requesting also that the court order Zeszotarski to complete a sworn declaration on certain

4

subjects concerning petitioner's allegations. On May 31, 2013, the government filed motion to dismiss petitioner's motion to vacate. All motions are ripe for ruling.

## DISCUSSION

A.   The Government's Motion to Dismiss Petitioner's Motion to Vacate

    1.   Standard of Review

Rule 12 of the Rules Governing Section 2255 Proceedings states that, "[t]he Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules. Courts have often applied Federal Rule of Civil Procedure 12(b)(6) to a motion to dismiss a section 2255 motion. The government contends that dismissal of petitioner's motion is appropriate where his allegations contradict his sworn testimony at his change of plea hearing and has not shown the requisite extraordinary circumstances to support such allegations. As the government is claiming petitioner's motion is insufficient as a matter of law due to the purported lack of extraordinary circumstances, the Rule 12(b)(6) standard is appropriately applied here. See White v. United States, No. 4:06-CR-068-FL-1, 2012 WL 3023392, at *2-4 (E.D.N.C. July 24, 2012) (analyzing petitioner's ineffective assistance of counsel claim as against his Rule 11 colloquy under the 12(b)(6) standard) appeal dismissed, No. 13-6328, 2013 WL 2421681 (4th Cir. June 5, 2013).

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

5

U.S. 544, 570 (2007)).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable" to the non-moving party but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement [,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a petitioner to articulate facts, that, when accepted as true, demonstrate that the petitioner has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

    2.    Substantive Analysis

Respondent argues that petitioner's motion should be dismissed where his allegations of ineffective assistance of counsel are contradicted by his plea agreement and his sworn statements during his change of plea hearing. Specifically petitioner argues his attorneys told him that Assistant U.S. Attorney Gaston Williams promised to stand silent at his sentencing and not request an imprisonment term, that respondent would not seek debarment if he pleaded guilty, and that he would not be personally liable for the restitution owed by his corporate co-defendant. These allegations, however, contradict the terms of petitioner's plea agreement, as well as defendant's sworn statement that no promises were made to him in an effort to make him plead guilty. See Tr. Change of Plea Hr'g 18.

Petitioner's solemn declarations in open court regarding his plea agreement "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Such declarations constitute

6

"a formidable barrier in any subsequent collateral proceedings." United States v. White, 366 F.3d 291, 296 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74). Nonetheless, in "extraordinary circumstances" the truth of such statements is not conclusively established such that a district court may dismiss a section 2255 motion relying on contrary allegations. United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2003). See also, Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975) (where a petitioner makes some reasonable allegation as to why his statements concerning his plea were untrue, such statements are not to be considered conclusively established) overruled on other grounds by United States v. Whitley, 759 F.2d 327 (4th Cir. 1985)

In this case, the court found that petitioner had made such reasonable allegations as to why his statements concerning his plea were untrue. Petitioner's statements were buttressed by a transcript he filed of a conversation with his then-attorney, Payne, which gave some support to the allegation that petitioner was told a side deal had been struck with respondent regarding his imprisonment, and that he would not be personally liable for the restitution in the agreement.

In its motion to dismiss, respondent attaches as exhibits numerous affidavits and emails in support of its arguments that petitioner was not told there was a side deal for the government to stand silent, was not told he would avoid debarment, that joint and several liability with the corporation was a non-issue, and that petitioners was not told he would be able to manage his farm while in custody. Thus, respondent argues that petitioner has not made the requisite showing to overcome the presumption of veracity of his statements at his change of plea hearing.

The documentary exhibits filed by respondent are not, however, properly considered by the court on a motion to dismiss. These documents are offered to counter the substance of the petition. This evidence underscores a factual dispute between respondent and petitioner regarding what

7

petitioner was told by his attorneys. Such a factual dispute is not amenable to resolution on motion to dismiss, but should be resolved by the court after holding hearing on the matter. See United States v. White, 366 F.3d 291, 296-97 (4th Cir. 2004). Therefore the government's motion to dismiss will be denied in this part. The government's legal argument concerning the scope of relief petitioner requests as being outside the bounds of what any favorable ruling could achieve survives, however. This aspect is addressed more particularly below.

      3.      Proper Remedy

There is a question of the proper remedy should petitioner succeed on his motion. Petitioner asserts he received ineffective assistance of counsel in entering into his plea agreement with the government. Therefore he requests that he be allowed to accept the government's plea offer but be "resentenced with competent and prepared counsel ready to argue against active time."[1] Pet.'s Resp. Opp'n. Mot. for Extension of § 2255 Response, 8 (DE 315). As the government argues, such relief is inappropriate in this case.

Defendants have a Sixth Amendment right to effective assistance of competent counsel during plea negotiations. Lafler v. Cooper, 566 U.S. ---- 132 S.Ct. 1376, 1384 (2012). In order to maintain his claim of ineffective assistance of counsel petitioner must demonstrate that (1) counsel's performance was deficient and (2) that deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984). In the context of a plea agreement, a petitioner satisfies the "prejudice" requirement of the Strickland test if he shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on [continuing the] trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Should petitioner succeed in showing he

---

[1] Later, petitioner appears to request different relief, asking that the court "resentence [petitioner] in a manner consistent with the government's promise to stand silent." Pet.'s Resp. Opp'n. Mot. to Dismiss, 6 (DE 339).

8

received ineffective assistance of counsel when deciding whether to accept the plea agreement, there is a question then of remedy. "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." Lafler, 132 S.Ct. At 1388 (quotations omitted). Leapfrogging over the question of ineffective assistance here, the court focuses squarely on the sought-after remedy, that is a do-over of sentencing with a different lawyer.

Petitioner's request that he be resentenced with new counsel is not a proper remedy for one who asserts that but for the constitutionally deficient performance of prior counsel he would not have pleaded guilty. See Pet.'s Mot. to Vacate, 22 ("[Petitioner] would not have originally accepted the plea arrangement if Ramos and Payne had not misadvised him about the government's position on incarceration."). Indeed, the second prong of the relevant test here is a reasonable probability that but for counsels' alleged errors, petitioner would not have pleaded guilty and continued with trial. The remedy that is properly tailored to petitioner's allegedly injury would not be for him to continue in a plea agreement that he avers he never would have entered into. The proper remedy is rather to allow petitioner out of his plea agreement, to re-instate the indictment, and to allow petitioner to replead. See United States v. Mooney, 497 F.3d 397, 409 (4th Cir. 2007) (petitioner who was prejudiced by receipt of ineffective assistance of counsel in pleading guilty was permitted to withdraw his guilty plea). Because if petitioner was to succeed in establishing ineffective assistance of counsel, his requested remedy is unavailable to him, in this part the government's motion to dismiss is ALLOWED, and in corresponding part petitioner's motion to vacate is DENIED. It is unclear to this court whether on this basis petitioner wishes to proceed. Petitioner is allowed fourteen (14) days to elect whether to proceed on his motion to evidentiary hearing in

9

furtherance of the remedy of being allowed out of his plea agreement, confronted by the allegations in the re-instated indictment, and then re-arraigned. In this remaining part the motion is held in abeyance.

B.  Motion to Find Attorney-Client Privilege has been Waived

   1.  Waiver of Privilege

Respondent has moved this court find that attorney-client privilege has been waived to the extent necessary to prove or disprove petitioner's claims for ineffective assistance of counsel. More specifically, the government contends that privilege is waived with respect to: (1) any communications regarding whether or not any plea agreement should be accepted, proposed, or discussed; (2) any communications with counsel on July 6, 2011, or relating to July 6, 2011, the day the petitioner entered into his plea agreement; (3) any authorization or communication relating to arguing for a lesser included offense; (4) communications relating to sentencing; (5) communications about debarment; (6) communications about joint and several liability for restitution; and (7) discussions with counsel about post-trial motions filed.[2]

"[W]hen a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim." United States v. Pinson, 584 F.3d 972, 978 (10th Cir. 2009). See also Strickland v. Washington, 466 U.S. 668, 691 (1984) ("In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.") (citation omitted); Dunlap v. United States, 4:09-CR-00854-RBH-1, 2011 WL 2693915, at*2 (D.S.C. July

---

[2] The government initially requested this court find that petitioner's waiver of attorney-client privilege extended to other topics, but acknowledged in its reply brief that the waiver initially sought was over-broad.

10

12, 2011) (citing cases). However, such a waiver of privilege is narrow and cannot be used in all subsequent proceedings. See United States v. Nicholson, 611 F.3d 191, 217 (4th Cir. 2010) (holding that grant of a *habeas* motion should restore a petitioner to the position he would have had in error-free proceedings and that "[g]iving the prosecution the advantage of obtaining the defense casefile- and possibly even forcing the first lawyer to testify against the client during the second trial-would assuredly not put the parties back at the same starting gate." (quoting Bittaker v. Woodford, 331 F.3d 715, 717 (9th Cir. 2003))).

In this case, petitioner has argued that he received ineffective assistance of counsel because of what his counsel allegedly told him with respect to his sentence of imprisonment, debarment, restitution, and his ability to run his farm, maintaining these statements caused him to enter into his plea agreement. Respondent contends that petitioner has therefore waived attorney-client privilege with respect to several subjects, as listed above. These subjects are all relevant to resolving the issues in the instant *habeas* petition. They bear on whether petitioner's attorneys told him the government made certain promises as petitioner claims, whether he would have insisted on going to trial in the absence of being told of those purported promises, and the context of the plea discussions. Thus, where such communications are necessary to prove or disprove petitioner's claims, he has waived attorney-client privilege with respect to those claims for the purposes of these *habeas* proceedings.[3]

    2.       Request to Compel Zeszotarski Declaration

---

[3] The government has filed a redacted version of its sealed memorandum in support of its motion to dismiss, redacting material which would be privileged in the absence of a finding of waiver of attorney-client privilege, among other things. Where the court has found such waiver, the government is now DIRECTED to file a second redacted version of its memorandum in support of its motion to dismiss, including those matters of or relating the attorney-client relationship which no longer are appropriately sealed within fourteen (14) days of entry of this order.

11

The government also requests this court order Zeszotarski to complete a declaration addressing (1) whether he heard any discussion between petitioner and petitioner's attorneys on July 6, 2011, about plea discussions with the government and the degree to which he was present for those discussions; (2) whether anyone made statements in his presence about a promises by the government regarding a sentencing recommendation or to "stand silent", and if so, what specifically he heard; (3) what statements, if any, were made by the government regarding debarment during July 6, 2011, plea discussions; (4) what statements, if any, petitioner's lawyers made about debarment in his presence, and whether petitioner was present for those statements; and (5) whether anyone made statements in his presence regarding promises or statements by the government about debarment.

As the Fourth Circuit has made clear, canons of professional conduct do not purport to state the law governing attorney-client privilege. NLRB v. Harvey, 349 F.2d 900, 906 (4th Cir. 1965). North Carolina Rule of Professional Conduct 1.6(a), however, provides that "[a] lawyer shall not reveal information acquired during the professional relationship with a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)." Rule 1.6(b)(1) instructs that an attorney may reveal information protected by paragraph (a) where doing so is necessary to comply with a court order. See N.C. Rules of Prof'l Conduct R. 1.6(b)(1) (2013). The government therefore requests the court issue an order to Zeszotarski to reveal the aforementioned information.

Petitioner notes that the government's request for such an order sounds as a motion to compel discovery. See Meeks v. Neven, No. 2:06-CV-01509-RCT, 2009 WL 2043910, at *1 (E.D. Cal. July 13, 2009) (petitioner seeking to obtain an affidavit constituted a request for discovery).

12

Petitioner first argues that such a motion must be denied under Rule 6 of the Rules Governing Section 2255 proceedings, which require a party seeking discovery in a section 2255 proceeding to first obtain the court's authorization to conduct discovery. See § 2255 Rule 6(a). Petitioner contends, second, that there is no mechanism by which the court may compel a response to a party's informal extrajudicial inquiries. As the court agrees that there is no rule allowing it to issue such an order, it need not reach petitioner's first argument. In this case, unlike in the cases cited by the government, no subpoenas or discovery devices have been served, and the court is unaware of any rule allowing it to issue an order compelling a response to an informal inquiry. Therefore it will not issue an order compelling Zeszotarski to respond to the government's informal inquiries.

## CONCLUSION

For the reasons stated, the court DENIES in part and GRANTS in part the government's motion to dismiss, DENIES in part and HOLDS IN ABEYANCE in part petitioner's motion to vacate, and GRANTS in part and DENIES in part the government's motion to find attorney-client privilege has been waived and request for an order directing Zeszotarski to complete a declaration as described herein. Attorney-client privilege has been waived for these proceedings with respect to the topics noted by the government, but the court declines to issue an order directing Zeszotarski to complete a declaration. The government is DIRECTED to file a second redacted version of its memorandum in support of its motion to dismiss petitioner's motion to vacate now including those matters which are no longer appropriately sealed within fourteen (14) days of entry of this order. In the same period of time, petitioner shall provide notice concerning whether he wishes to proceed on his motion or now to abandon it.

SO ORDERED, this the 6th day of August, 2013.

_____
LOUISE W. FLANAGAN
United States District Court Judge

14